IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID WAYMON WATERS                                                      PLAINTIFF
ADC #080152

V.                          NO: 4:15CV00402 BRW/PSH

MONTE MUNYAN *et al*                                                   DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

#### I. Relevant facts

Plaintiff David Waymon Waters filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 2, 2015. Defendants are Dr. Garry Stewart and nurse Monte Munyan, both of the Faulkner County Detention Center.[1] Waters asserts the following in his complaint:

> [O]fficer Cobley took me to see Monte Munyun I then asked him why did they take my prescribed meds or why aren't they being filled and he stated that Dr. Steward

---

[1] Waters' claims against former defendants Doe and the Faulkner County Detention Center have been dismissed. Doc. Nos. 10 & 22.

1

> who is not my Doctor or didn't prescribe my medication for me said he was trying to save the county money so that's why he's not filling my prescriptions. I have congestive heart failure, high blood pressure, arthritis in my back and legs and rotator cup problems and I suffer from depression. I was taking Tyzanadine, Terizosin, Meloxicam, Wellbutrin, Furosemide, 81 mg Baby Aspirin, Meteroprolol, Hydrocodon 10.325, Ranatidine. The Doctor took me off Wellbutrin, Terizosin, Meloxicam and Hydrocodone 10.325 so now I'm in constant pain and I'm having mood swings and my blood pressure is high all the time and my vision is blurred. The medical staff is ignoring me and not taking me serious.

Doc. No. 2, page 5. Waters also claims on at least one occasion he received 9 pills in an 8 pill package, and once received 6 pills in a 5 pill package. Finally, Waters alleges "Munyan put me on the bench from 4:30 p.m. till 8:30 p.m. for medical watch, but really he was punishing me cause I said that I filing a lawsuit. I still think their trying to kill me." Doc. No. 2, page 6.

Waters was arrested and booked into the Faulkner County Detention Center on March 27, 2015. Doc. No. 34-15. At that time, Waters stated he was taking Meloxicam, Furosenide, Metoprolol, Ranitidine, Terazosin, Klor-Con, Tizendine, Bupropion, and Nitrogen. Doc. No. 34-3. Waters saw Stewart regularly during his incarceration at the detention center, and he was prescribed multiple medications. Doc. Nos. 34-4 to 34-12. According to defendants' undisputed statement of facts, Waters was given Tizanidine, a muscle relaxer, from April 22, 2015, to May 27, 2015, and from June 4, 2015, until his release. Waters was given Terazosin, for prostate issues, from April 9, 2015, until May 27, 2015. Waters' sister brought him 30 day prescriptions for Terazosin on April 15, 2015, and June 27, 2015. Waters received Metroprolol for high blood pressure and heart rate issues starting on May 20, 2015, and his blood pressure was checked regularly while he was at the detention center. On April 9, 2015, Waters was given Meloxicam for arthritis. Waters' sister brought in 30 day prescriptions for Meloxicam on April 15, 2015, and June 27, 2015. Waters' sister brought him a 30 days supply of Wellbutrin on April 15, 2015, and Waters' family brought in

Bupropion on June 27, 2015. Waters was given Prozac in the place of Wellbutrin on June 4, 2015. Waters was given Furosemide at the detention center on April 22, 2015, and the prescription was reordered on June 16, 2015. Waters's sister brought him a 30 day prescription of Furosemide on June 27, 2015. On April 2, April 25, and May 29, 2015, Waters was given baby aspirin. Waters was prescribed Ranitidine on April 9 and May 29, 2015, and Waters' sister brought him a 30 day prescription on April 15, 2015, and June 27, 2015. Waters was also given Klor-Con, ibuprofen, Lasix, Prednisone, and Amoxicillin during his incarceration at the detention center. On June 4, 2015, Stewart discontinued all of Waters' medications, and prescribed Tizanidine, Lasix, baby aspirin, ibuprofen, and Metroprolol. Stewart prescribed ibuprofen for shoulder pain on June 18, 2015. On June 25, 2015, Stewart saw Waters for medications and dental, and prescribed Terazosin, Wellbutrin, and Meloxicam. On one occasion, Waters was given nine pills instead of eight. In response to a grievance Waters filed, detention center officials acknowledged the vendor made a packaging error, which was not repeated. Doc. No. 34-13. Waters was released on July 21, 2015. Doc. No. 34-18.

Although the alleged denial of appropriate medication is Waters' primary claim, he also alleges he was placed on medical watch in retaliation for a threat to file legal action. The undisputed facts demonstrate that Waters was placed on the booking area bench on suicide watch on May 17, 2015, and monitored from 6:30 p.m. to 10:30 p.m., at which time he signed a "No Harm Agreement." Doc. Nos. 34-16 & 34-17.

Defendants filed a motion for summary judgment, a brief in support, and a statement of facts, on September 12, 2016. Doc. Nos. 32-34. Waters has not responded, despite an order advising him

3

of his right to do so. Doc. No. 35.[2]

Defendants argue they are entitled to summary judgment because they were not deliberately indifferent to Waters' medical needs, that Waters was not denied due process when he was placed on suicide watch on the booking area bench, that they are entitled to qualified immunity, and that there is no basis for official capacity or county liability. Doc. No. 33.

Because Waters failed to controvert the facts set forth in defendants' statement of undisputed facts, Doc. No. 34, those facts are deemed admitted. *See* Local Rule 56.1(c). The defendants' statement, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute.

## II. Standard of review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or

---

[2]The Court's order also advised Waters that if he did not respond to defendants' motion, the Court could assume the facts set out in the statement of facts are true.

fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Waters' complaint advances two distinct legal claims: that he was denied adequate medical care, and that Munyan restrained him on a bench in retaliation for his threat to file a lawsuit.

<u>Medical Care</u>

Waters' primary claim is that he was denied adequate medical care at the Faulkner County Detention Center. Defendants argue they are entitled to summary judgment on this claim because they were not deliberately indifferent to Waters' medical needs. Waters was a pre-trial detainee at the time of the events described in his lawsuit. A pretrial detainee's constitutional claims arise under the Fourteenth Amendment, but courts apply the Eighth Amendment deliberate indifference standard. *See Hartsfield v. Colburn*, 371 F.3d 454, 456-57 (8th Cir. 2004) (pretrial detainees' claims arise under Fourteenth Amendment; they are entitled to at least as much protection as afforded under Eighth Amendment); *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (per curiam) (punishment of pretrial detainee prior to adjudication of guilt constitutes due process violation, but deliberate indifference standard applied to pretrial detainee's inadequate medical care claim).

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed with an inadequate medical care claim, a plaintiff must allege and

5

prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). However, "'Grossly incompetent or inadequate medical care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.'" *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

It is clear that neither Munyan nor Stewart deliberately disregarded Waters' serious medical needs. Stewart saw Waters multiple times during Waters' roughly four month stay at the detention center. Doc. Nos. 34-4 to 34-12. Waters was medically screened upon intake at the detention center. While Waters was an inmate there, Stewart saw and treated him for high blood pressure, prostate issues, arthritis, depression, knee pain, a boil, right shoulder and chest pain, and back pain. The medical records establish that Stewart did not ignore Waters' complaints, but rather prescribed medication as necessary. Stewart also sought Waters' prior medical records in order to treat any medical issues he had. Doc. No. 34-1, page 4. Although Waters may not have received exactly the same medications as he had before his detention, in light of the fact that Stewart did see Waters and prescribe medications to treat his conditions, any difference in medications alone is insufficient to establish a constitutional violation. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996) (if medical experts disagree over appropriate course of treatment, prison officials do not violate Eighth Amendment when they refuse to implement inmate's requested treatment). *See also Dulany v.*

*Carnahan*, 132 F.3d at 1240 (in the face of medical records indicating that treatment was provided, and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he does not believe he received adequate treatment).

Additionally, Waters has not provided any medical evidence that the brief delay from the time he was booked into the detention center until Stewart issued prescriptions caused him any injury. *See Coleman v. Rahja*, 114 F.3d 778, 784 (8th Cir. 1997)(when an inmate alleges that a delay in medical care constitutes a constitutional violation, he must allege, and eventually place in the record, verifying medical evidence establishing the detrimental effect of the delay). *See also Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006)(one month delay in treating fractured finger did not rise to a constitutional violation); *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009) (constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish). Similarly, he has not provided any medical evidence that the medications Stewart prescribed to Waters caused injury. And finally, although Waters complained that Munyan doesn't like him, there is no evidence that Munyan ever interfered with any treatment Stewart prescribed. Waters' claims against Stewart and Munyan for medical indifference should therefore be dismissed.

Bench placement

Although Waters speculated that Munyan placed him on a bench in retaliation for a threat to file a lawsuit, the undisputed facts show that he was placed there to be on suicide watch, not in retaliation for any comments he made. Doc. No. 34, page 4. In fact, Waters signed a "No Harm Agreement" at the end of the suicide watch time. Doc. No. 34-17. Waters' retaliatory bench placement claim should therefore be dismissed. *See Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir.

Case 4:15-cv-00402-BRW   Document 36   Filed 03/07/17   Page 8 of 9

1996) (inmate claiming retaliation is required to prove but for unconstitutional retaliatory motive action would not have occurred); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (allegations of retaliation must be more than speculative and conclusory).

To the extent that Waters is trying to assert a conditions of confinement claim, it should be dismissed. Because Waters was a pretrial detainee at the time he was placed on the bench, his claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Defendants violated Waters' due process rights if the jail's conditions of confinement constituted punishment. *Id*. However, because, "[u]nder the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment," courts apply the identical deliberate-indifference standard as that applied to conditions-of confinement claims made by convicts. *Id*. (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *see also Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994).

To prevail on a condition of confinement claim, inmates and pretrial detainees must show: (1) the condition was serious enough to deprive them of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmates' health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir.1996); *Frye v. Pettis County Sheriff Dept.*, 41 Fed.Appx. 906, 907 (8th Cir. 2002)(unpub. per curiam). In light of the minimal amount of time Waters spent on the bench, and the lack of any injury described, Waters cannot prevail on a due process claim relating to this claim.

Immunity and official capacity liability

Because the undisputed facts demonstrate that neither Stewart nor Munyan violated Waters'

constitutional rights, there is no need to consider whether they would be entitled to qualified immunity. Likewise, without a constitutional violation there can be no official capacity liability, and no further analysis is required.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment be GRANTED, and plaintiff David Waymon Waters' complaint be DISMISSED. Doc. No. 32.

2. Waters' complaint be DISMISSED WITHOUT PREJUDICE with respect to his claims against defendant Doe, and DISMISSED WITH PREJUDICE in all other respects.

3. The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 7th day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE